[Civ. No. 5457.   Second Appellate District, Division Two.—September 23, 1929.]

MABEL L. TIGHT, Appellant, v. HARRY E. WELLS et al., Defendants; WILLIAM C. PAGE, Respondent.

Tom C. Thornton, Gaines B. Turner and J. Edward McCurdy for Appellant.

No appearance for Respondent.

CRAIG, J.—The parties to this cause were realty brokers, and, while it was stipulated that they were not copartners, it appears that they had an understanding whereby one should receive a portion of any commissions involved in any escrow which he might assist the other in closing. It is admitted that respondent "worked in and out of" appellant's office during the month of December, 1924, and a part of February, 1925. Prior to December, 1924, Mrs. J. R. Butler and her husband listed with appellant's office certain real property, which appellant and respondent sold to H. E. Wells and wife, and the latter entered into possession thereof. The agreement for sale was escrowed with a Los Angeles bank, $1,000 of a total consideration of $15,500, being deposited with the escrow as commission, $775 of which was paid to said brokers. Said bank was then negotiating for a loan upon certain property belonging to Wells, and it was testified that the sale above mentioned was for cash, contingent upon the consummation of the loan. At the same time other brokers held an exclusive agency to sell the Wells property. The bank failed to make a loan, and the parties to the escrow transferred their escrow agreement to a Glendale bank, designated by respondent as "a friend to Mrs. Wells." Thereafter the Butlers purchased the Wells property, and appellant instituted proceedings for a portion of the commissions paid by the Butlers to respondent for effecting the second sale, or conveyance, from Wells to Butler. After a trial before the court, without a jury, the defendant moved for a nonsuit, which was granted, upon the asserted ground that the so-called first transaction terminated when the Los Angeles bank declined to make a loan to Wells, and that the sale by the latter to the Butlers was a subsequent, separate and distinct transaction, consummated by respondent, without the aid of appellant.

We are not assisted upon this appeal by a brief on behalf of the respondent, but from a careful examination of the record we are convinced that the plaintiff succeeded in establishing a sufficient *prima facie* case to entitle her to a judgment. She testified in her own behalf, and the defendant was called by her counsel as a witness. No other witnesses were examined or evidence offered. The plain-

tiff testified that respondent was absent from her office during the greater part of the month of January, 1925, but that she occasionally inquired as to the progress of the Butler-Wells sale, and was assured by Page that he was taking care of it and that "it would come all right"; that she suggested, "if anything comes up in any manner, anything comes up, let me know." She also swore that when she later inquired at the bank regarding the matter, she was informed that the sale had been converted into an exchange; that she had not previously known of a proposed Wells sale, to Butler. From the respondent's own testimony it appears that although out of the office much of the time during January, 1925, he was in touch with the Butlers. He testified that Mrs. Butler "kept after me why she didn't get her money"; that he did not finally sever his connection with Mrs. Tight's office until January 31, 1925, and that on February 4th, or five days later, he "figured she (Mrs. Butler) was in a bad position; so, on February 4th, after the expiration of the Frank Meline Company's exclusive listing, why, I suggested to Mrs. Butler, I said, 'Why don't you buy this South Brand [Wells] property?'" He admitted that after negotiations with Wells he succeeded in reducing the price of their property to $40,000, persuaded them to "take back the $22,500 paper" which they had escrowed toward the purchase of the Butler property, and "then $14,500 which she had coming in cash was to apply on that." It was also admitted by respondent that he did not relinquish the key to appellant's office until two days before he initiated the Wells sale, or February 2d—two days after having ostensibly abandoned his real estate brokerage vocation. Within a period of less than one week, Page vacated the office of his partner in the transaction, noted the expiration of the Meline Company's agency, interested Mrs. Butler in the Wells property, and consummated the original sale through a conveyance in lieu of cash. By such change merely in form of the consideration, the escrow was closed. However, but for the sale initiated by the appellant, the Wells property would not have been conveyed. Mrs. Tight was therefore the procuring cause of a transaction which through an unbroken chain of events entitled her to compensation, and she is entitled to the agreed proportionate share of the

commission earned. (*Sessions* v. *Pacific Imp. Co.,* 57 Cal. App. 1 [206 Pac. 653].)

The foregoing statement of facts is of course made from the evidence construed favorably to the appellant. It is possible that had the trial been completed this same evidence might have been viewed in a different light by the court when it came to a final determination of the issue presented. ▮ But it is elementary that in deciding a motion for nonsuit the evidence must be viewed most favorably to the plaintiff, and that if as so construed a case has been made out the motion should be denied.

The judgment is reversed.

Works, P. J., and Thompson (Ira F.), J., concurred.